**POLSINELLI LLP**
Alexander Polishuk (SBN 265349)
apolishuk@polsinelli.com
Armida Derzakarian (SBN 322608)
aderzakarian@polsinelli.com
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:  (310) 556-1801
Facsimile:   (310) 556-1802

Attorneys for Plaintiff
OPTIV SECURITY INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| OPTIV SECURITY INC., a Delaware corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>DAVID GILBERTS, an individual; and DOES 1-10, inclusive,<br><br>  Defendant. | **CASE NO.**<br><br>1. MISAPPROPRIATION OF TRADE SECRETS (VIOLATION OF DEFEND TRADE SECRETS ACT);<br>2. MISAPPROPRIATION OF TRADE SECRETS (VIOLATION OF CAL. UNIFORM TRADE SECRETS ACT);<br>3. CONVERSION; and<br>4. COMPUTER FRAUD AND ABUSE ACT.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Optiv Security Inc. ("Plaintiff" or "Optiv"), a Delaware corporation, hereby brings this Complaint against David Gilberts ("Defendant" or "Gilberts") an individual and alleges as follows:

## **INTRODUCTION**

1. This action arises out of Gilberts' violations of the law, which have seriously interfered, obstructed, and damaged Optiv's business interests and ongoing operations, including the willful and malicious misappropriation of Optiv's confidential and trade secret information, and the unauthorized access and wrongful control over protected computer files, data, and systems containing highly confidential and proprietary business information.

2. Optiv is an information security company based in Denver, Colorado that has been in the cyber security business for over 15 years. Optiv utilizes proprietary processes, products, and technologies to provide organizational cyber security services and solutions to its clients. Optiv also acts as a representative and provides customer support to various manufacturers of products which assist in the delivery of cyber security solutions. Optiv is highly regarded in the cyber security industry for its expertise, quality services, and professionalism.

3. Optiv employed Gilberts as a Client Manager from approximately August 2018 until January 2021, when he was terminated for continued performance issues.

4. Upon Gilberts' termination on or about January 4, 2021, Optiv requested that Gilberts immediately return his Optiv central processing unit and any documents or data containing confidential, proprietary, and/or sensitive information.

5. Shortly following his termination for performance issues, Gilberts filed a lawsuit against Optiv and his former supervisor alleging age discrimination and harassment and wrongful termination. After months of litigation and when the parties engaged in discovery efforts, Optiv learned, for the first time, that sometime prior to returning his Optiv-issued laptop computer, Gilberts downloaded, saved, and

purloined confidential, proprietary, and/or sensitive information, including Optiv's trade secret information, to an external storage device.

6. Optiv further learned, for the first time, that while Gilberts still had access to Optiv's internal network, he downloaded and saved to his Optiv central processing unit, e.g. laptop computer, Optiv's confidential, proprietary information and trade secrets, including, but not limited to, the specific details in customer lists containing data related to approximately 14,000 of Optiv's clients, including client identities, key contacts, services areas, internal substantial analyses of customers' preferences and buying patterns and practices, prices, purchase and sales pricing, customer historical information, and other related customer purchasing information, as well as marketing materials containing proprietary and confidential marketing strategies and business plans developed and owned by Optiv ("Confidential Information").

7. Optiv has spent significant time, effort, and resources developing, creating, and maintaining the Confidential Information.

8. During litigation, Optiv also learned, for the first time, that while Gilberts was employed by Optiv, Gilberts' spouse owned and operated a cyber security company, CYBERSECURE SYSTEMS, LLC., which provides cyber security products and services, and thereby, on information and belief, is in direct business competition with Defendant.

9. Upon information and belief, Gilberts is now employed as a Managing Director at SubRosa Cyber Solutions—a direct competitor to Optiv—and continues to improperly and unlawfully use Optiv's Confidential Information for the benefit of his new employer, SubRosa.

## PARTIES

10. Optiv is, and at all times mentioned in the Complaint was, a corporation, incorporated under the laws of the State of Delaware with its principal place of business located in Denver, Colorado. Optiv regularly conducts business in the State

of California.

11. Optiv is informed and believes, and on that basis alleges, that Gilberts, a former employee of Optiv, is an individual who is and at all times mentioned herein was and continues to be a resident of the County of San Bernardino, State of California where he is domiciled.

12. The true names and identities of the Defendant Does One to Ten, whether individuals, partnerships, corporations, limited liability companies, joint ventures, trusts, or otherwise, are presently unknown to Optiv, who therefore sues them by fictitious names. Optiv will amend the complaint to show their true names and identities when ascertained. Optiv alleges on information and belief that each of such fictitious Defendants are legally responsible in some manner for the events and damages alleged herein.

## JURISDICTION

13. This action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Under 35 U.S.C. § 1331, this Court has original jurisdiction over this controversy for misappropriation of trade secret claims pursuant to 18 U.S.C. § 1836(c) and for unlawful computer access claims pursuant to 18 U.S.C. § 1030(g). This Court has supplemental jurisdiction over the controversy for all other claims asserted herein pursuant to 28 U.S.C. § 1367.

14. This Court also has jurisdiction over this controversy, pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

15. A corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Thus, Optiv is a citizen of the States of Colorado and Delaware for diversity purposes. 28 U.S.C. § 1332(c).

16. To establish citizenship for diversity purposes, a natural person must be

a citizen of the United States and be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Thus, Gilberts is a citizen of the state of California for diversity purposes. *Id.*

17. In determining whether a complaint meets the $75,000 threshold amount in controversy, the courts consider the aggregate amount of the claims and value of those claims. *Wolde-Meskel v. Vocational Instruction Project,* 166 F.3d 59, 62 (2nd Cir. 1999). Here, the value of damages that Optiv will suffer from the claims alleged in this Complaint exceeds $75,000.

**VENUE**

18. Venue is proper in this Court because Gilberts resides in Crestline, California, which is located within the District and Division of this Court. 28 U.S.C. §1391(b)(1).

**GENERAL ALLEGATIONS**

*Gilberts' Employment with Optiv and the Non-Disclosure Agreement*

19. Optiv is engaged in the highly competitive business of providing cyber security and related services to companies throughout the United States.

20. Optiv hired Gilberts as a Client Manager on or about August 8, 2018.

21. As a Client Manager, Gilberts was responsible for marketing and selling Optiv cyber security services and security technology solutions to strategic accounts, as well as managing and leveraging existing client relationships within the Optiv marketplace. In his position, Gilberts was permitted access and exposed to confidential and proprietary information, including but not limited to, the Confidential Information.

22. During his employment, Gilberts executed and agreed to be bound by Optiv's Confidentiality and Non-Competition Agreement (the "Confidentiality Agreement"), which contains certain valid and enforceable covenants. A true and

correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

23. The Confidentiality Agreement explicitly states that "corporate strategic plans, concepts, ideas, advancements…financial information…strategic marketing information, marketing data, sales information, sales strategy information, pricing data, customer lists, [and ] internal prospects lists" are considered Confidential Information, and Gilberts acknowledged that all such Confidential Information, as defined in the Confidentiality Agreement, constitute trade secrets. Ex. A, ¶ 2(b).

24. In signing the Confidentiality Agreement, Gilberts agreed to "maintain the Confidential Information in the strictest confidence and agree[d] not to directly or indirectly disclose[,] disseminate, misappropriate, use, copy, digest, or summarize any Confidential Information." Ex. A, ¶ 3(b).

25. Gilberts further agreed that he would not use, misappropriate, or disclose any Confidential Information "at any time during or after employment with [Optiv] for the benefit of any person other than [Optiv]." Ex. A, ¶ 3(b).

26. Gilberts also expressly agreed that upon separation from employment, Gilberts "will immediately deliver to [Optiv] all Confidential Information" including all documents and copies thereof. Ex. A, ¶ 7.

27. Finally, Gilberts acknowledged and agreed that if he violated any provision of the Confidentiality Agreement, Optiv would suffer irreparable harm and would be entitled to injunctive relief to prohibit or restrain such violation and to recover from Gilberts all reasonable legal costs and expenses incurred in enforcing the Confidentiality Agreement. *See* Ex. A, ¶ 15.

### *Optiv's Trade Secrets*

28. Optiv invests considerable time, labor, and cost in developing, marketing, and maintaining its confidential, proprietary, and trade secret information to provide high quality, professional, and credible cyber security services and solutions to its clients.

29. The Optiv Confidential Information is unique, intricate, complex, and highly specialized and is not readily accessible by others, including Optiv's competitors, and was acquired and developed by Optiv over years of work in the cyber security industry.

30. The Optiv Confidential Information derives independent economic value from the fact that it is not generally known to the public or to Optiv's competitors and is not otherwise readily ascertainable.

31. Recognizing the value of its confidential, proprietary, and/or trade secret information, Optiv, at all times, took significant steps to protect the confidentiality and trade-secret nature of its Confidential Information. For example, Optiv limits access to the Confidential Information to those individuals who require the use of such information as part of their duties. Optiv further maintains the Confidential Information on a protected network which requires company authorization to access, a password, and multiple level authentication process.

32. In addition, Optiv requires employees, like Gilberts, to sign agreements in which they agree to maintain the confidentiality of such Confidential Information.

33. Optiv's Confidential Information was developed over time (e.g. through more than a decade worth of work) and at substantial expense to Optiv (e.g., through the work of thousands of employees). To Optiv's knowledge, this Confidential Information is not known outside of Optiv, and if its competitors had access to Optiv's Confidential Information they could save substantial time and cost that they otherwise would have to expend to develop the information on their own.

### *Gilberts' Misappropriation of the Trade Secrets*

34. As a Client Manager, Gilberts was given access to the competitively sensitive or commercially valuable data or information, constituting trade secrets under California and federal law.

35. Gilberts' access to the Confidential Information was limited to the sole purpose of Gilberts performing the functions of his job at Optiv.

36. On or around January 4, 2021, Optiv terminated Gilberts for continued performance issues.

37. Pursuant to its regular policy and practice, Optiv asked Gilberts to immediately return his Optiv-issued laptop and any other data or information containing the Confidential Information.

38. About two weeks later, on January 19, 2021, Gilberts filed a lawsuit in Los Angeles Superior Court (Case No. 21STCV02051) against Optiv and his former supervisor alleging that he was harassed and discriminated against based on his age then subsequently wrongfully terminated.

39. After months of litigation, Optiv obtained, through discovery, over 5,000 pages of documents from Gilberts containing the Confidential Information. In or around November of 2021, Optiv conducted an independent forensic investigation and was able to confirm that as early as July of 2020 and through December of 2020, Gilberts accessed Optiv's internal network and began a pattern of downloading, copying, and saving confidential, sensitive, and trade secret information, to his own unauthorized storage device.

40. Upon information and belief, Gilberts retained data and information containing the Confidential Information and is still in possession of the Confidential Information of Optiv and used—and continues to use—such information to solicit Optiv's clients for the purposes of providing competing products and services, either by way of his new employer or his spouse's competing company CYBERSECURE SYSTEMS, LLC.

41. Optiv is informed and believes that Gilberts continues to use Optiv's proprietary information for the benefit of developing the client base at CYBERSECURE SYSTEMS, LLC. and/or SubRosa, in direct breach of the Confidentiality Agreement and in violation of California and federal law.

42. As a result of Gilberts' misconduct, including, without limitation, his breach of his obligations to Optiv and misappropriation of Optiv's Confidential

Information, Optiv has been—and continues to be—damaged and irreparably harmed.

43. The cyber security business is highly competitive.

44. Because of the highly confidential and sensitive nature of the relationship required to serve clients in the cyber security market, once a client is lost, the likelihood that the client will return in the future, particularly near future, is highly improbable.

45. The lost future revenue streams, lost word of mouth, lost good will and other consequences can never be fully measured, nor compensated by monetary damages.

46. Unless Gilberts' improper conduct is stopped, Optiv will continue to suffer irreparable harm.

47. In light of Gilberts' conduct, it is evident that Gilberts cannot be trusted to respect the obligations contained in the Confidentiality Agreement, and injunctive relief is necessary to ensure that Optiv does not suffer further and continuing harm. Upon information and belief, Gilberts is continuing to engage in conduct in violation of the Confidentiality Agreement and California and federal law.

## FIRST CAUSE OF ACTION

### (For Violation of the Defend Trade Secrets Act – 18 U.S.C. §§ 1831 *et seq*. against Defendants)

48. Optiv hereby incorporates by reference the allegations in paragraphs 1-51 above as though fully set forth herein.

49. Optiv owns and maintains certain Confidential Information, as defined above, including customer lists, customer names, customer contact information, customer buying preferences and history, and marketing and sales strategies and plans.

50. This Confidential Information relates to products and goods used or intended for use in interstate or foreign commerce.

51. The misappropriated trade secrets, specified above, acquired, disclosed, and/or used by Gilberts were not acquired by Gilberts through independent development or reverse engineering, nor were they attained from another person with a right to disclose the Confidential Information.

52. The Confidential Information specified above derives independent actual and potential commercial value from not being generally known or readily available through independent development or reverse engineering by persons such as Gilberts who can obtain economic value from its disclosure and use.

53. Optiv makes significant efforts that are reasonable under the circumstances to maintain the secrecy of its Confidential Information. Specifically, Optiv maintains its Confidential Information on a protected network which requires company authorization to access, a password is required to access such information, and access is limited to those individuals who require the use of the Confidential Information as part of their duties. Optiv further maintains the secrecy of the Confidential Information by requiring each of its employees who would, through their employment with Optiv, have access to the Confidential Information, including Gilberts, to sign an agreement, similar in form and substance to the agreement in this action, prior to being provided access to the Confidential Information.

54. Gilberts had access to and improperly purloined, transferred, and saved on an unauthorized storage device, the Confidential Information of Optiv without Optiv's permission.

55. Defendants improperly possess, and on information and belief used Optiv's Confidential Information to their economic benefit. For example, upon information and belief, Gilberts is using Optiv's Confidential Information to contact Optiv customers in an effort to convince them to leave Optiv and bring their business to CYBERSECURE SYSTEMS, an entity owned and operated by Gilberts' spouse, and/or to Gilberts' new employer SubRosa.

56. Defendants' actions and conduct in acquiring, disclosing, using, and/or

destroying the Confidential Information of Optiv, without authority or consent, constitute violations of the DTSA, 18 U.S.C. § 1830 *et seq.*

57. As a direct and proximate result of Defendants' misappropriation of the trade secrets of Optiv, Optiv has incurred monetary damage and injury. Optiv is entitled to recover from Defendants, jointly and severally, the actual damages incurred as a result of Defendants' misappropriation pursuant to the DTSA, 18 U.S.C. § 1830 *et seq.*

58. Optiv has no adequate complete remedy at law as Optiv's injuries cannot be fully quantified and the balance of equities and public interest favor entering injunctive relief against Defendants. As a direct and proximate result of Defendants' misappropriation of the trade secrets of Optiv, Optiv is entitled to permanent injunctive relief for the time that the Confidential Information exists, plus an additional period of time necessary to eliminate any inequitable or unjust advantage arising from Defendants' misappropriation pursuant to the DTSA, 18 U.S.C. § 1835.

59. The conduct and actions of Defendants in misappropriating the trade secrets of Optiv were both willful and malicious. As a result, Optiv is entitled to an award of punitive damages and reasonable attorneys' fees pursuant to the DTSA, 18 U.S.C. § 1836(b)(3).

60. As a direct and proximate result of Defendants' actions, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

## SECOND CAUSE OF ACTION

**(For Violation of the California Uniform Trade Secrets Act – Cal. Civ. Code §§ 3426 *et seq*. against Defendants)**

61. Optiv hereby incorporates by reference the allegations in paragraphs 1-51 above as though fully set forth herein.

62. Optiv owns and maintains certain Confidential Information, as defined

above, including customer lists, customer names, customer contact information, customer buying preferences and history, and marketing and sales strategies and plans.

63. The misappropriated trade secrets, specified above, acquired, disclosed, and/or used by Gilberts were not acquired by Gilberts through independent development or reverse engineering, nor were they attained from another person with a right to disclose the Confidential Information.

64. The Confidential Information specified above derives independent actual and potential commercial value from not being generally known or readily available through independent development or reverse engineering by persons such as Gilberts who can obtain economic value from its disclosure and use.

65. Optiv makes significant efforts that are reasonable under the circumstances to maintain the secrecy of its Confidential Information. Specifically, Optiv maintains its Confidential Information on a protected network which requires company authorization to access, a password is required to access such information, and access is limited to those individuals who require the use of the Confidential Information as part of their duties. Optiv further maintains the secrecy of the Confidential Information by requiring each of its employees who would, through their employment with Optiv, have access to the Confidential Information, including Gilberts, to sign an agreement, similar in form and substance to the agreement in this action, prior to being provided access to the Confidential Information.

66. Gilberts had access to and improperly took the Confidential Information of Optiv without Optiv's permission.

67. Defendants improperly possess, and on information and belief used Optiv's Confidential Information to their economic benefit. For example, upon information and belief, Gilberts is using Optiv's Confidential Information to contact Optiv customers in an effort to convince them to leave Optiv and bring their business to CYBERSECURE SYSTEMS, an entity owned and operated by Gilberts' spouse,

and/or to Gilberts' new employer SubRosa.

68. Gilberts knows that he has deprived Optiv of its Confidential Information through improper means.

69. `Optiv has no adequate complete remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering injunctive relief against Defendant. Therefore, Optiv is entitled to injunctive relief against Defendants to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and to prevent Defendants from continuing to profit from the past use of the wrongfully procured trade secrets.

70. Additionally, as a direct and proximate result of the wrongful conduct of Defendants, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv's clients, goodwill, revenues, and profits; and diminution in the value of its business.

71. As a direct and proximate result of Defendants' actions, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

## THIRD CAUSE OF ACTION
### (For Conversion Against Defendants)

72. Optiv hereby incorporates by reference the allegations in paragraphs 1-51 above as though fully set forth herein.

73. Optiv is informed and believes, and based thereon alleges, that Defendants wrongfully exercised exclusive dominion and control over, and/or concealed, transferred or stole company property, computer files, data files, supplies, and other personal property, and have wrongfully come into possession of Optiv's confidential and proprietary data through means of conversion.

74. By reason of the wrongful acts alleged herein, said Defendants have proximately caused Optiv's damages, plus reasonable investigative costs, and attorneys' fees.

75. The acts alleged herein were intentional, malicious, despicable, and outrageous and in conscious disregard of the rights of Optiv with the intent to injure, vex, and oppress so as to warrant the imposition of punitive and exemplary damages in a sum subject to proof at trial.

76. As a direct and proximate result of Defendants' actions, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

## FOURTH CAUSE OF ACTION

**(For Violation of the Computer Fraud and Abuse Act –**

**18 U.S.C. § 1030 against Defendants)**

77. Optiv hereby incorporates by reference the allegations in paragraphs 1-51 above as though fully set forth herein.

78. Optiv's company network, file servers, laptops, and other computers ("Optiv Systems") are password protected and access requires Optiv's authorization.

79. The Optiv Systems are used in and affect interstate commerce or communications.

80. Optiv maintains an Information Security Policy ("Security Policy") which applies to all Optiv employees, including Defendant, and to which all employees have access, at all times, through the Company intranet. The Security Policy provides for detailed protocols for the treatment of sensitive and confidential information. Specifically, the Policy expressly identifies "key client contact details" and "contact list" as sensitive and confidential information. Further, the Policy states as follows:

> As part of the on-boarding process, all employees…must acknowledge that upon termination of employment, they must return Optiv owned assets including:
>
> Sensitive documentation (e.g., about Optiv processes, technical procedures and key client contact details) stored on portable

storage media or in physical form.

81. In addition to onboarding training, all Optiv employees participate in annual, mandatory cybersecurity awareness and education sessions.

82. Additionally, Optiv undertakes cybersecurity measures to ensure the privacy of its sensitive and confidential file(s), including files that reference the confidential contact information of its current or prospective clients. At the very initial level of its screening process for access to confidential and sensitive data, this information is stored on Optiv's internal network (e.g., intranet) which is only accessible to current Optiv employees with valid access credentials, which includes (1) an active Optiv ID; (2) first level password; and (3) two-factor authentication for remote access. Further, access to Optiv's sensitive and confidential file(s) is restricted and limited based on the employee's position within the Company. When an employee is terminated or resigns, the employee's accounts are deactivated, the employee's Optiv ID and password are disabled, and the employee no longer has access to Optiv's intranet.

83. Lastly, Optiv's Information Resource Code of Ethics is included in its US Employee Handbook, and is applicable to all Optiv employees, including Gilberts. Amongst other directives and prohibitions, the Code of Ethics specifically prohibits transmitting Optiv's intellectual property, trade secrets, non-public information and other internal, private or confidential information, which includes client lists and client contact information, unless approved in writing by Optiv Information Security and executive management.

84. During his employment, Optiv expressly prohibited accessing and transferring Optiv's intellectual property, trade secrets, non-public information and other internal, private, or confidential information, without written authorization or for non-work-related purposes.

85. Upon information and belief and based thereon, Optiv alleges that Gilberts knowingly and with the intent to defraud unlawfully accessed the Optiv

81171446.1

Systems, at least including the Optiv-issued laptop computer, which contained Optiv's Confidential Information, without authorization or by exceeding authorized access to such a computer, and from at least July 7, 2020 through the end of his employment, obtained and unlawfully transferred from such a protected computer to his own storage device, one or more things of value, including but not limited to Optiv's highly confidential, proprietary business information and its trade secrets, and did so without the written authorization of Optiv and for non-work related purpose.

86. Gilberts' improper and unauthorized access damages Optiv, including but not limited to impacting the integrity of Optiv's Confidential Information.

87. In response to Gilberts' improper and unauthorized access, Optiv conducted an investigation to determine the circumstances of the improper and unauthorized access, the damage such access caused, and how to respond to halt the unauthorized access and mitigate the damage. This investigation and remediation utilized significant company resources, including the time and attention of senior executives and employees, resulting in losses in excess of $5,000.

88. As a direct and proximate result of Gilberts' improper and unauthorized access, Optiv has been damaged, and is likely to continue to be damaged, and Gilberts has been unjustly enriched. Optiv is entitled to compensatory damages and disgorgement of any and all profits Gilberts made as a result of his wrongful conduct, in amounts to be proven at trial, an injunction prohibiting Gilberts from accessing the Optiv Systems without Optiv's explicit authorization, and other equitable relief. Such damages are in excess of $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Optiv prays for judgment against Defendants as follows:

1. For compensatory damages against Defendants according to proof and punitive damages in an amount necessary to deter Defendants in the future from the misconduct alleged;

2. For a permanent injunction restraining and enjoining Gilberts, his agents, successors, and assigns from the following:

    a. Violating his Non-Disclosure Agreement;

    b. Maintaining in any tangible format (other than for purpose of discovery) or disclosing any of Optiv's Confidential Information;

    c. Directly or indirectly participating in or receiving or retaining benefits from Defendant's violation of the Non-Disclosure Agreement with Optiv and from otherwise depriving Optiv of the benefit of its bargain under its Non-Disclosure Agreement;

3. For attorneys' fees and costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

Dated: December 21, 2021    **POLSINELLI LLP**

By: */s/ Alexander Polishuk*
Alexander Polishuk
Armida Derzakarian

Attorneys for Plaintiff
**OPTIV SECURITY INC.**