# EXHIBIT A

DocuSign Envelope ID: 69040B31-0A5E-490C-B341-B33E80706D2D



# CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Confidentiality and Non-Competition Agreement ("Agreement") is entered into on _____ 8/8/2018 | 1:40:58 PM MDT ("Effective Date") between Optiv Security Inc. (the "Company") and David Gilberts _____ ("Employee").

**1.    Introduction.**

a.    The Company and its Affiliates are presently in the business of information security and IT infrastructure as value added resellers, reselling technology from vendors to customers, offering regulatory compliance and wireless solutions, and providing information security and IT infrastructure services.

b.    The business of information security is a highly competitive business and the Company and its Affiliates have expended, and continues to expend, significant money, skill and time to develop and maintain confidential and/or proprietary information relating to the Company's and its Affiliates' services, operations, vendor relationships and client services.

c.    By virtue of Employee's position with the Company and/or its Affiliates, Employee has acquired or may from time to time in the future acquire knowledge of trade secrets or confidential and proprietary information relating to the Company's and its Affiliates' business. The Company and its Affiliates use confidential information throughout the countries in which they do, or will in the future do, business. Use of such confidential information outside of the Company will cause significant and irreparable injury to the Company and its Affiliates.

d.    In consideration of the foregoing and the mutual covenants and promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Employee agree as follows:

**2.    Definitions.**

a.    "Affiliates" means Olive Parent, Inc. and any and all affiliates or subsidiaries of Olive Parent, Inc., including without limitation Advancive LLC, Optiv Security India Private Limited, Adaptive Communications LLC, Communication Cable Company d/b/a Comm Solutions Company, the Company, Optiv Federal Inc., Optiv Canada Inc., and Accuvant B.V., and any other entities which become affiliates or subsidiaries of Olive Parent, Inc. at any time.

b.    "Confidential Information" means any data or information that is competitively sensitive or commercially valuable, and not generally known to the public, and includes but is not limited to the following: confidential memoranda, notes, e-mail, information, records, corporate strategic plans, concepts, ideas, advancements, products, plans, designs, processes, procedures, vendor names, vendor information, financial information, services and operational manuals, strategic marketing information, marketing data, sales information, sales strategy information, pricing data, customer lists, internal prospect lists, employee lists, terms of employment, consulting methodologies, and compilations, and any other information related to the ownership and operation of the Company. Confidential Information also includes without limitation any and all information of a confidential or proprietary nature regarding or used in the Company's business or learned by Employee about Company or any Company services or products. In addition, Confidential Information includes any and all information however delivered or learned, belonging to or concerning: (i) the Company or any third party doing business with the Company; (ii) any Affiliates; or (iii) any customers or vendors of the Company or any of its Affiliates.

c.    "Inventions" mean discoveries, improvements, ideas, conceptions, developments, designs, and works of authorship, whether or not tested, reduced to practice, or subject to any form of legal protection, which Employee may conceive or make, individually or along with others, which directly or indirectly (i) relate to matters within the scope of Employee's duties or field of responsibility during Employee's employment with the Company or one of its Affiliates; (ii) are based on knowledge of the actual or anticipated business or research and development activity of Company or its Affiliates; or (iii) are aided by the use of time, materials, facilities or Confidential Information of Company or one of its Affiliates.

d.    "Intellectual Property Rights" means any form of legal protection for Inventions in all countries of the world, including applications and certificates for Letters Patent, Utility Models, Inventor's Rights, Copyrights, and Trademarks.

**3.    Non-Disclosure of Confidential Information.**

a.    Employee acknowledges and agrees that in the course of Employee's employment with Company or one of its Affiliates, and in direct consideration for Employee's execution of this Agreement, Employee will have access to, receive and obtain information concerning the actual or anticipated work conducted by Company and/or its Affiliates or the operations of Company and/or its

DocuSign Envelope ID: 68340B31-0A5E-4908-B341-B23E80706D2D

Affiliates which may constitute Confidential Information.  The parties acknowledge and agree that all such Confidential Information is a trade secret and that the Company and its Affiliates have taken adequate measures to prevent the Confidential Information from becoming available to those not selected by the Company or its Affiliates.

               b.          Employee agrees to maintain the Confidential Information in the strictest of confidence and agrees not to directly or indirectly disclose disseminate, misappropriate, use, copy, digest, or summarize any Confidential Information, except to the extent necessary to carry out Employee's responsibilities as directed and/or authorized by the Company.  All records in whatsoever form and in whatsoever medium recorded, and any copies thereof, relating to the business of the Company or its Affiliates shall be and remain the sole property of the Company or its Affiliates, as applicable, and shall not be removed from the Company's premises except as necessary to carry out Employee's responsibilities as directed and authorized by the Company.  Further, Employee agrees that Employee will not use, misappropriate, disclose, or disseminate any Confidential Information at any time during or after employment with the Company for the benefit of any person other than the Company.

               c.          Employee understands that the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  During the term of employment and thereafter, Employee agrees to hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except directly in connection with Employee's work for the Company, Third Party Information unless expressly authorized by an officer of the Company in writing.

               d.          Employee agrees to not, during the course of Employee's employment with Company, improperly use or disclose any confidential information or trade secrets of any former employer or other person or entity and that Employee will not bring on the premises of the Company any confidential information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

               e.          Notwithstanding the foregoing, it is understood that, at all times, Employee is free to use public information which is generally known in the trade or industry not generally known as result of a breach of this Agreement by Employee.

        **4.**      **Inventions**.  As a material inducement to Company to enter into this Agreement, to employ Employee, and to provide Employee with training, Confidential Information and access to information, Employee agrees and covenants that all Inventions and other Intellectual Property Rights acquired or developed by Company or its Affiliates or Employee during the term hereof, shall be and remain the property of Company and its Affiliates.

               a.          Employee acknowledges and accepts that Inventions shall be the sole and exclusive property of Company and its Affiliates.  Accordingly, Employee agrees to assign and shall assign to Company or its nominee, without further right of compensation, all of Employee's rights, title and interest in and to any Invention conceived or made (i) during Employee's employment or (ii) within one (1) year after termination of Employee's employment.  Employee agrees that it will not dispute, challenge, or put at issue or cause to be disputed, challenged, or put at issue the Company's and its Affiliates' ownership rights as described in this section.  Employee shall not do anything which may impair the Company's and its Affiliates' rights under this section.  Employee will take such actions as are necessary to ensure the Company's and its Affiliates' rights under this section and will execute any documents, assignments or contracts on Employee's behalf as Employee's attorney-in-fact, and any such documents, assignment or contracts shall be binding against Employee.

               b.          During the term of this Agreement, Employee will promptly divulge to Company all Inventions which Employee develops or discovers.

               c.          Employee agrees to keep and maintain adequate and current written records of all Inventions during the term of this Agreement.  The records could be in the form of notes, sketches, drawings and any other format that may be specified by the Company.  The records will be available to the Company upon request, and shall remain the Company's sole property at all times.

               d.          Employee understands that the provisions of this Agreement requiring assignment of Inventions to the Company and its Affiliates do not apply to an Invention that Employee developed entirely on Employee's own time without using Company's and its Affiliates' equipment, supplies, facilities, or Confidential Information ("Other Inventions"), except for those Other Inventions that either (i) relate at the time of conception or reduction to practice of the Company's or its Affiliates' businesses or actual or demonstrably anticipated research or development of the Company or its Affiliates or (ii) result from any work that Employee performed for the Company or its Affiliates.  Employee will advise the Company promptly in writing of any Invention that Employee believes to constitute an Other Invention.  Notwithstanding the foregoing sentence, if in the course of Employee's employment with the Company, Employee incorporates into any Company product, process or service any Other Invention owned by Employee or in which Employee has an interest, Employee hereby grants to the Company a nonexclusive, royalty-free, fully paid- up irrevocable, perpetual, transferable, sublicenseable, world-wide license to reproduce, make derivatives works of, distribute, perform, display, import, make, have made, modify, use, sell, offer to sell and exploit in any way such Other Invention as part of or in connection with such product or service and to practice any method related thereto.

**5.** **Non-Competition Agreement**.

a.    In exchange for good and valuable consideration including, without limitation, benefits to which Employee would not otherwise be entitled, Employee agrees that the following restrictions on activities after employment are necessary to protect the goodwill, trade secrets, Confidential Information and other legitimate interests of the Company and its Affiliates. Accordingly, Employee agrees that Employee shall not, for the period of time Employee is employed by Company or one of its Affiliates and for one (1) year following Employee's termination of employment with the Company or an Affiliate ("Non-Competition Period"), directly or indirectly, personally, by agency, as an employee, through an entity or by any other artifice or device:

i.    Engage in, or advise or provide consultation regarding, activities similar to those which Company or its Affiliates render to their Customers (hereinafter defined) by either directly or indirectly becoming personally involved in, including but not limited to the financing, operation, management or control, associated with, employed by, or under contract to any person or entity which is directly or indirectly in competition with Company or its Affiliates at any time during the Non-Competition Period (x) within the territory in which Employee works or has worked for Company or an Affiliate, and (y) within one-hundred (100) miles of any office of Company or its Affiliates during Employee's employment with Company;

ii.    Call upon, solicit, divert, take away, deliver to, sell to or service, work for as an employee, independent contractor or on any other basis, or attempt any such activity with, any Customer as of the Effective Date of this Agreement or at any time thereafter during the Non-Competition Period. "Customer" shall mean any person, entity, partnership or corporation whom Employee worked with directly while employed at the Company or an Affiliate; or any person, entity, partnership or corporation who was a target client of the Company or its Affiliates and was assigned to Employee as a prospect; or any person, entity, partnership or corporation that has purchased goods and services from the Company or its Affiliates within the 12-month period immediately preceding Employee's separation from the Company for any reason;

iii.    Directly or indirectly request or advise any Customer to withdraw, curtail, cancel or not undertake business with the Company or its Affiliates; or

iv.    Directly or indirectly disclose to any other person, entity, partnership or corporation the names of past, present or prospective clients of the Company or its Affiliates. The parties agree that the names of these clients are confidential and proprietary and constitute trade secrets of the Company or its Affiliates, as applicable.

b.    Employee acknowledges and agrees that while employed by the Company or an Affiliate, Employee has access to Confidential Information that would be valuable or useful to the competitors of the Company and its Affiliates, and, therefore, acknowledges that the foregoing restrictions on Employee's future employment and business activities are fair and reasonable.

c.    The foregoing geographic and duration restrictions contained in this Agreement are fair and reasonable to protect the Company's and its Affiliates' legitimate business interests, given the geographic scope of the Company's and its Affiliates' business operations and the nature of Employee's position with the Company. Employee acknowledges that Employee has sufficient abilities and talents to be able to obtain, upon the termination of employment, comparable employment from another business while fully honoring and complying with this provision and that Employee is prepared for the possibility that Employee's standard of living may be reduced during the one-year period of the non-competition agreement contained in the Agreement, and assumes and accepts any risk associated with that possibility.

d.    In the event an enforcement remedy is sought under this section, all time periods provided for in this section shall be extended by one day for each day Employee fails to comply with these covenants and restrictions.

e.    The parties agree that the Company may change the scope and/or time limitations set forth in this Section 5 as a condition of a reassignment, promotion, or other change in position, compensation, or duties for the Employee. Such a change in the terms of this Agreement will be made in writing by a duly authorized officer of the Company. The Company will give the Employee at least fourteen (14) days written notice of the change in terms. Employee's act in continuing employment after the effective date will be deemed an acceptance of the change.

f.    In the event Employee breaches this Section 5 or any restrictive covenant with any previous employer, Employee shall immediately forfeit the Employee's right to participate in any option, warrant, phantom unit ,or other equity incentive plan of any kind offered by the Company (collectively the "Plan"), and any equity or rights to acquire equity granted or to be granted under the Plan shall be deemed withdrawn by the Company and forfeited (including any equity or rights to acquire equity which may have vested).

**6.** **Non-Solicitation Agreement**. Employee expressly agrees and understands that it would cause substantial harm and detriment to Company and its Affiliates if employees of Company were to be hired by Employee or lured by Employee to a business similar to that of Company or its Affiliates. Specifically, the harm and detriment that would be incurred by Company or its Affiliates

includes, but is not limited to, loss of office continuity and return on investment made in training employees, additional training and hiring costs for replacement employees, potential loss of customers, and potential loss of Confidential Information. In consideration of Company's and its Affiliates' interests in protecting Confidential Information, customer relationships, and goodwill and loyalty, Employee hereby covenants and agrees that Employee will not in any way interfere with or attempt to interfere with the relationship between Company and its Affiliates and any employee of Company. Employee shall not, directly or indirectly, aid any entity to, induce or attempt to induce any employee of Company or one of its Affiliates to (i) leave Company's or one of its Affiliate's employ, or (ii) to work for, as an employee, independent contractor or otherwise, any person or entity which is directly or indirectly in competition with the business of Company or its Affiliates at any time during the Non-Competition Period. For purpose of this section, an "employee of Company" shall mean any person who is employed by Company or one of its Affiliates as of the date of the inducement or attempted inducement or who was employed by Company or its Affiliates at any point during the six (6) months prior to such date.

   **7.**  **Return of Company Documents.** Employee hereby covenants and agrees that upon separation from employment with the Company or an Affiliate, Employee will immediately deliver to the Company all Confidential Information and other Company and Affiliate property, including without limitation any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information, or Intellectual Property Rights of the Company or its Affiliates. Additionally, upon request by the Company, Employee will permit the Company access to Employee's personal computer and files, wherever located, to determine whether any Confidential Information or other Company property is stored in or maintained on Employee's personal computer. Employee further agrees that any property situated on the Company's or an Affiliate's premises and owned by the Company or its Affiliates, including without limitation disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

   **8.**  **Association with Company.** Nothing contained in this Agreement shall be construed as altering the at-will nature of employment of Employee, or as impairing Employee's right or the right of the Company or an Affiliate to terminate Employee's employment with the Company or an Affiliate, with or without notice or cause. Employee's obligations under this Agreement shall continue regardless of whether Employee's employment with the Company or an Affiliate is terminated voluntarily or involuntarily, or with or without notice or cause.

   **9.**  **Exclusive Services.** Employee agrees to diligently perform all tasks assigned to Employee in the course of employment with Company or an Affiliate and to devote Employee's full time, attention, skill, energy and efforts to Company and its Affiliates and shall not participate, directly or indirectly, in any business or activity that is in competition with Company or any of its Affiliates. Company maintains a zero tolerance policy on side-work, freelancing, or contracting while working at Company or an Affiliate and will turn over any cases of competitive work to our legal counsel. Company reserves the right to prosecute Employee to the fullest extent of the law for breach of any terms or combination of terms of this Agreement.

   **10.**  **Employee Representations & Indemnity.** Employee represents and warrants to the Company and its Affiliates that Employee has not previously assumed or agreed to any terms or obligations (including, but not limited to, non-competition or non-solicitation covenants and restrictions, or similar restrictions, with any former employer) inconsistent with those contained in this Agreement and will not use, disclose, or otherwise rely upon any confidential or proprietary information or trade secrets derived from any previous employment, if Employee has any, in the performance of Employee's duties on behalf of the Company. In the event that any previous employer takes any action or initiates any proceedings against Company or one of its Affiliates for Employee's violation of any of the terms, obligations, covenants, or restrictions described in this section, Employee agrees to indemnify Company and its Affiliates for its legal costs and any damages incurred in defending such actions or proceedings.

   **11.**  **Compensation After Termination.** Should Employee violate any term or combination of terms in this Agreement, Employee is subject to grounds for immediate termination without compensation of any form for the duration that Employee committed violations of this Agreement. In the event Employee receives compensation while committing violations of any term or combination of terms in this Agreement, Company and its Affiliates reserve the right to prosecute Employee to collect reparations for such compensation.

   **12.**  **Termination.** Upon Employee's termination, regardless of whether the termination is voluntary or involuntary, or with or without notice or cause, Employee agrees to submit to an exit interview, to return all Confidential Information at that time, and to provide information concerning Employee's next employer and duties for that employer.

   **13.**  **Notification of New Employer.** In the event that Employee leaves the employ of the Company or an Affiliate, Employee hereby consents to the notification by Company of Employee's new employer of all rights and obligations under this Agreement.

   **14.**  **Non-Disparagement.** Employee shall not make any disparaging verbal or written statements concerning the Company or its Affiliates or any of their respective officers, directors, shareholders, or employees.

   **15.**  **Legal and Equitable Remedies.** If Employee violates, or threatens to violate, any of the provisions of this Agreement, Company shall be entitled to seek temporary or permanent injunctive or equitable relief, without posting any bond or other security, in addition to all other rights and remedies it may have. Employee agrees and acknowledges that if Employee violates, or threatens to violate,

any of the provisions of this Agreement, the Company will suffer irreparable harm for which money alone cannot fully compensate.  By entering into this Agreement, the parties agree that the Company is not electing any remedy or waiving any right under this Agreement, any other agreement or the law, including the right to seek damages from Employee.  If the Company prevails in any legal action to enforce the covenants contained in this Agreement, or to enjoin Employee from violating this Agreement, the Company shall be entitled to recover, as part of its damages, its reasonable legal costs and expenses for bringing and maintaining any such action.  Employee acknowledges that, to the extent permitted by law, the Company has the right to withhold any remuneration still owed to Employee upon termination until Employee has returned all Company equipment, property or Confidential Information.

16. **Transfer of Employment**.  Any transfer of Employee's employment from the Company to any Affiliate of the Company shall not constitute a termination of employment or of this Agreement.  Upon any such transfer, this Agreement shall automatically be assigned by the Company to the applicable Affiliate, and this Agreement shall otherwise continue in full force and effect.

17. **Early Resolution Conference**.  This Agreement is understood to be clear and enforceable as written and is executed by both parties on that basis.  However, should Employee later challenge any provision as unclear, unenforceable, or inapplicable to an activity that Employee intends to engage in, Employee will first notify the Company in writing and meet with a Company representative and a neutral mediator (if the Company elects to retain one at its expense and sole discretion) to discuss resolution of any disputes between the parties ("Early Resolution Conference").  Employee will provide this notification at least fourteen (14) days before Employee engages in any activity on behalf of a competing business or engages in other activity that could foreseeably fall within a questioned restriction or otherwise violate this Agreement.  The failure to comply with this requirement shall waive Employee's right to challenge the clarity, applicability, or enforceability of the Agreement and its covenants or restrictions at a later time.  All rights of both parties will be preserved if the Early Resolution Conference requirement is complied with even if no agreement is reached in the conference.

18. **Kansas Law**.  The parties agree that this Agreement shall be interpreted, governed and enforced under the laws of the State of Kansas, regardless of its choice of law provisions and regardless of the residency or domicile of any of the parties.  Any disputes or claims arising out of or related to this Agreement shall be brought in and determined by the Johnson County District Court, State of Kansas, or the U.S.  District Court for the District of Kansas.  Each of the parties hereby consents to the personal jurisdiction of these Courts as to actions related to the enforcement or interpretation of this Agreement and agrees that such Courts shall have exclusive jurisdiction over any such actions.  None of the parties shall contest the personal jurisdiction of such Courts over any such action.

19. **Partial Invalidity**.  The parties acknowledge and agree that if a court of competent jurisdiction declares any provision of the Agreement invalid or unenforceable, the remainder of this Agreement shall remain fully enforceable.  To the extent that any court concludes that any provision of this Agreement is void or voidable, the court shall reform such provision(s) to render the provision(s) enforceable, but only to the extent absolutely necessary to render the provision(s) enforceable and only in view of the parties' express desire that the Company be protected to the greatest possible extent under applicable law from improper competition and the misuse or disclosure of Confidential Information.

20. **Acknowledgments**.  The parties acknowledge that all items of Confidential Information are important, material and affect the successful conduct of the business of the Company and its Affiliates and their good will.  Employee acknowledges that Employee's covenants and agreements in this Agreement are reasonable and necessary to protect the legitimate interests of the Company and the Confidential Information.  Employee acknowledges that the restrictions in this Agreement are not so broad as to prevent Employee from earning a livelihood or practicing Employee's chosen profession after termination of Employee's duties for the Company.

21. **Miscellaneous**.  No failure or delay on the part of any Party to the Agreement in exercising any power, right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.  The rights of the Company under this Agreement shall inure to its successors and assigns.  Employee may not assign this Agreement, nor delegate any rights or obligations hereunder.

22. **Execution in Counterparts**.  The Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement.  Delivery of an executed counterpart of the Agreement by facsimile or other electronic transmission, or any other reliable means shall be effective for all purposes as delivery of a manually executed original counterpart.  Either party may maintain a copy of the Agreement in electronic form.  The parties further agree that a copy produced from the delivered counterpart or electronic form by any reliable means (for example, photocopy, facsimile or printed image) shall in all respects be considered an original.

23. **Signatures**.  The parties agree that this Agreement may be signed by the Company by electronic means (e.g., electronic signature of company representative).  Employee acknowledges that the use of an electronic signature by the Company does not allow Employee to raise, and Employee expressly waives, any argument that the Company did not sign or execute the Agreement.

24. **Entire Agreement**.  This Agreement is the final, complete and exclusive agreement of the parties and supersedes and merges all prior discussions between us with respect to the subject matter hereof.  No modification of or amendment to this Agreement, nor

any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in Employee's duties, salary or compensation will not affect the validity or scope of this Agreement.

**I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS. ACCEPTED AND AGREED TO:**

Dated: 8/8/2018 | 1:40:58 PM MDT

**OPTIV SECURITY INC.**
1125 17th Street, Suite 1700
Denver, Colorado 80202

*David Gilberts*
1BA8F453C43E469...
(Signature)

By: *Bill Croutch*
D7063D5735014FB...

David Gilberts

Name: Bill Croutch
(Printed Name)

24383 Sunnycrest Ct Diamond Bar CA 91765

Title: SVP & General Counsel
(Address)